IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **ROSANNE BONEBRAKE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 14-3023 |
| | ) |
| **CAROLYN W. COLVIN, Acting** | ) |
| **Commissioner, Social Security** | ) |
| **Administration,** | ) |
| | ) |
| Defendant. | ) |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge:**

On April 2, 2015, United States Magistrate Judge Tom Schanzle-Haskins issued a Report and Recommendation (d/e 16) recommending that this Court deny summary judgment in favor of Plaintiff, Rosanne Bonebrake and grant summary judgment in favor of Defendant, Carolyn W. Colvin, Acting Commissioner of the Social Security Administration. Plaintiff filed Objections to the Report and Recommendation (d/e 13). Defendant has filed a response to the objections (d/e 14).

Upon careful review of the record and the pleadings, the Court agrees with the Magistrate Judge that the Administrative Law Judge's (ALJ) decision was supported by substantial evidence. Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (d/e 13) are DENIED. This Court ADOPTS the Magistrate Judge's Report and Recommendation (d/e 12) in full. Plaintiff's Motion for Summary Judgment (d/e 7) is DENIED, and Defendant's Motion for Summary Affirmance (d/e 10) is GRANTED. The decision of the Commissioner is AFFIRMED.

## I. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 72(b)(3), this Court determines "de novo any part of the magistrate judge's disposition that has been properly objected to." Although this Court does not need to conduct a new hearing on the entire matter, the Court must give "fresh consideration to those issues to which specific objections have been made." 12 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 3070.2 (2d ed. 1997); Wasserman v. Purdue Univ. ex rel. Jischke, 431 F. Supp. 2d 911, 914 (N.D. Ind. 2006).

If no objection is made, or if only a partial objection is made, the Court reviews the unobjected to portions for clear error. Johnson v. Zema Sys. Corp., 170 F.3d 734, 739 (7th Cir. 1999). This Court may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b)(3).

In conducting this de novo review, the Court reviews the decision of the Administrative Law Judge (ALJ) to determine whether the decision is supported by substantial evidence. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). If the decision has such support, the Court may not substitute its judgment for that of the ALJ. Id. "Substantial evidence is only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Nelson v. Apfel, 131 F.3d 1228, 1234 (7th Cir. 1997).

This Court will not review the credibility determinations of the ALJ unless the determinations lack any explanation or support in the record. Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008). The ALJ must articulate at least minimally her analysis of all relevant evidence, Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994), and "the [ALJ's] decision cannot stand if it lacks evidentiary

support or an adequate discussion of the issues," Lopez ex rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). Additionally, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

## II. BACKGROUND

The Court adopts the factual findings made by the Magistrate Judge. To summarize, Plaintiff suffers from lupus erythematosus (lupus). On June 16, 2010, Plaintiff filed her application for Social Security Disability Insurance Benefits under Title II of the Social Security Act (42 U.S.C. §§ 416(i) and 423). The alleged onset date of Plaintiff's disability is September 1, 2007, and her date last insured is March 31, 2009. Therefore, Plaintiff had to establish she was disabled before March 31, 2009 to be eligible for Disability Insurance Benefits. See Pepper v. Colvin, 712 F.3d 351, 361 (7th Cir. 2013) (acknowledging that the claimant's condition may have worsened since the date last insured but that the "Social Security regulations require a 'disability' finding before a claimant's date last insured").

The ALJ applied the five-step analysis set forth in the Social Security Regulations (20 C.F.R. §§ 404.1520). At Step 1, the ALJ found Plaintiff had not engaged in substantial gainful employment since the alleged onset date of disability, September 1, 2007. ALJ Decision R. 54. Plaintiff suffered from the severe impairment of lupus (Step 2), and Plaintiff's impairments or combination of impairments did not equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Step 3). Id. at 54-55.

At Step 4, the ALJ found that Plaintiff could perform a range of light work and had the maximum residual functional capacity to: lift and carry 10 pounds frequently and 20 pounds occasionally; sit, stand, and walk for a total of six hours through an eight-hour workday; never climb ladders, ropes, or scaffolds; no more than occasionally balance, stoop, kneel, crouch, and crawl; and no more than occasionally handle objects. In addition, Plaintiff must avoid concentrated exposure to temperature extremes and humidity, concentrated exposure to operational control of moving machinery, and unprotected heights and hazardous machinery. Id. at 55.

The ALJ found that Plaintiff could not perform her past relevant work as an office nurse. ALJ Decision R. 56. The ALJ

concluded, however, that Plaintiff could perform a significant number of jobs in the national economy, including core extruder, furniture rental consultant, and counter clerk (Step 5).  Id. at 57.

When the Appeals Council denied Plaintiff's request for review, the decision became the final decision of the Commissioner. Plaintiff appealed, arguing that the ALJ's residual functional capacity assessment was inadequate and the ALJ's credibility determination was patently erroneous.

On April 2, 2015, Magistrate Judge Schanzle-Haskins issued a Report and Recommendation finding the ALJ's decision was supported by substantial evidence and recommending that Defendant's Motion for Summary Affirmance be allowed and Plaintiff's Motion for Summary Judgment be denied.

### III. ANALYSIS

Plaintiff raises several objections to the Report and Recommendation.  Specifically, Plaintiff complains that the ALJ did not take into account the episodic nature of lupus and failed to consider the side effects of her medication when determining Plaintiff 's residual functional capacity.  Plaintiff also challenges the

ALJ's credibility determination.  The Court addresses the credibility determination first.

An ALJ's credibility determination is entitled to "special deference." Schomas v. Colvin, 732 F.3d 702, 708 (7th Cir. 2013). The Court will reverse an ALJ's credibility finding only if it is patently wrong.  Pepper, 712 F.3d at 367( also noting that the ALJ must adequately explain his credibility finding).

If the claimant's statements about her symptoms are not substantiated by objective medical evidence, the "adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."  Social Security Ruling (SSR) 96-7p (Policy Interpretation Ruling Title II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements); Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009) (noting that "the ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no evidence supporting it"); see also Sienkiewicz v. Barnhart, 409 F.3d 798, 804 (7th Cir. 2005) (noting that while an "ALJ may not disregard an applicant's subjective complaints of pain simply because they are not fully supported by

objective medical evidence . . . a discrepancy between the degree of pain claimed by the applicant and that suggested by medical records is probative of exaggeration"). The ALJ must consider the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes for her pain or symptoms; treatment received for relief of the pain or other symptoms; and other measures the individual uses to relieve the pain or symptoms. SSR 96-7p.

In this case, the ALJ noted Plaintiff's testimony that her symptoms flare 50% of the time. ALJ Decision, R. 52. Plaintiff complained of pain in her hands, right side, neck, back, abdominal pain, and worsening fatigue. Id. at 52. Plaintiff testified that, during a flare of her lupus, she could not get up and everything hurt. Id.

In assessing Plaintiff's credibility, the ALJ noted that Plaintiff's work history and the statements by family members supported Plaintiff's allegations about her work-related limitations. Id. at 52-53. However, the ALJ also found that Plaintiff's activities, which

included housework, running errands, playing the piano, writing letters, and applying for a crossbow permit, were not totally consistent with Plaintiff's allegations. Id. at 52-53. In addition, the Social Security Administration interviewer observed in June 2010 that Plaintiff had no difficulties sitting, standing, walking, using her hands, and writing. Id. at 53.

Moreover, the ALJ examined the relevant medical records and concluded that Plaintiff's overall treatment history and the objective medical evidence did not support Plaintiff's allegations about the severity of her limitations. ALJ Decision, R. 53. When reviewing the medical records, the ALJ noted the occasions when Plaintiff reported she had been doing well. For instance, on July 12, 2007, Plaintiff reported she had been doing well apart from intermittent abdominal pain. Id. at 53. On September 6, 2007, Plaintiff reported that, other than stomach pain, she was doing well. Id. In November 2007, Plaintiff told Dr. Cabalar, her rheumatologist, that she no longer had abdominal pain. Id. at 54. On May 7, 2008, Plaintiff reported she was doing really well, apart from some occasional aching on her feet after walking on uneven ground. Id. at 54. Finally, on September 10, 2008, Plaintiff reported that, apart

from occasional pain in her wrist, she was doing really well.  Id. at 54.

The ALJ also noted that the medical examinations were generally normal, other than knee crepitation (crackling) and one occasion of tenderness in the elbow.  ALJ Decision R. 53-54. Plaintiff had full range of motion in her joints.  Id.  One of her doctors observed she had a normal gait.  Id. at 53.  In January 2010, Dr. Jackson noted Plaintiff's grip strength was somewhat reduced and she had some generalized arthralgia (joint pain) and stiffness of her joints, but he found no restriction to joint range of motion.  Id. at 54.

The Court finds that the ALJ's credibility finding is not patently wrong.  The ALJ built a logical bridge between the evidence and her conclusion that Plaintiff was not fully credible.  The ALJ reasonably discounted Plaintiff's testimony about the severity of her symptoms given the inconsistency with the medical records, which show generally normal exams and few complaints by Plaintiff, and Plaintiff's daily activities.  See Getch v. Astrue, 539 F.3d 473, 483 (7th Cir. 2008) (finding, in light of the medical records documenting the claimant's normal range of motion, ability to walk and stand

without significant limitation, and absence of gout symptoms, it was not patently wrong for the ALJ to include that the claimant's impairments were real but that the claimant exaggerated the impact of his impairments on his ability to work).

Plaintiff argues that the ALJ failed to take into consideration the side effects of the medication Plaintiff took. Plaintiff testified that she suffered from extreme photosensitivity to the point she was more comfortable wearing sunglasses in a well-lit room. She also experienced nausea due to Motrin that she treats with Prilosec.

Plaintiff's reports of nausea due to medication do not show up in the medical records until late 2010, well after the date last insured. Therefore, the ALJ did not err by failing to address Plaintiff's nausea due to Motrin.

Plaintiff is correct that the ALJ did not address Plaintiff's photosensitivity, which is supported in the record. However, Plaintiff does not indicate how the photosensitivity supports her credibility. The ALJ found Plaintiff suffered from lupus and that the lupus was severe, but that the severity of Plaintiff's work-related limitations was not fully credible or consistent with the record. The fact that Plaintiff suffers the side-effect of photosensitivity does not

add anything to the credibility analysis in this case.  Therefore, the Court finds that the ALJ's failure to consider Plaintiff's photosensitivity was harmless.  See Jones v. Astrue, 623 F.3d 1155, 1162 (7th Cir. 2010) ("The ALJ need not, however, discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability"); Labonne v. Astrue, 341 F. App'x 220, 226 (7th Cir. 2009) (noting that an ALJ is not required to evaluate each piece of evidence, including side effects of medication).

Because the ALJ provided specific reasons for her credibility finding and those reasons are supported by the record, the ALJ's credibility determination will not be overturned.  See, e.g., Mueller v. Astrue, 860 F. Supp. 2d 615, 633 (N.D. Ill. 2012) (noting that the claimant's "subjective complaints were not required to be accepted insofar as they clashed with other, objective medical evidence in the record").

Plaintiff also argues that that the ALJ's emphasis on Plaintiff's reports of improvement in the medical records reflects a misunderstanding of the episodic nature of lupus.  Plaintiff asserts that she may be doing well and able to perform the necessary work

tasks for one-half of a month but then would experience a flare and be completely unable to do any work the other one-half of the month.  Plaintiff also argues that, even when she reported she was doing well, she was seeing a doctor or getting labs drawn every month.  In fact, every report of doing well was followed by a discussion of the problems she was having.  According to Plaintiff, when dealing with a chronic disease, the only time a doctor might note that a person is not doing well is when the patient presents in the midst of a symptom flare.  Plaintiff states she did not go to the doctor when she was having a flare because she could not get out of bed and could not be far from the toilet when she had her abdominal pain.

    Because many factors may cause a patient to tell her doctor that she is "doing well," an ALJ may not take that fact as objective evidence that the claimant is not disabled unless the ALJ conducts an adequate analysis.  See Micus v. Bowen, 979 F.2d 602, 606 (7th Cir. 1992) (the ALJ improperly discredited the claimant's reports that she suffered continuously with pain, fatigue, swelling, and nausea by relying on the claimant's statements to her doctors that she "felt good"); see also Bauer v. Astrue, 532 F.3d 606, 609 (7th

Cir. 2008) (finding the ALJ erred by discounting the treating doctors' opinions that the claimant could not work full time based on "hopeful remarks" the claimant made to her doctor during office visits that she was doing "doing quite well").

In this case, however, the ALJ did more than rely on Plaintiff's reports that she was "doing well" to conclude that Plaintiff was not disabled during the relevant time period. The ALJ noted Plaintiff's reports of doing well, but also recognized Plaintiff's complaints about her abdominal, elbow, wrist, and foot pain. However, the ALJ concluded that the medical examinations were fairly normal, other than finding crepitation in both knees, one finding of tenderness in one elbow, and somewhat reduced grip strength in January 2010 (the latter of which the ALJ accounted for in the residual functional capacity). Moreover, Plaintiff had full range of motion in her joints with no tenderness or effusion. ALJ Decision, R. 55-56. While the medical records showed that Plaintiff complained of significant abdominal pain in early 2007, this pain resolved by November 2007 and did not reappear until Plaintiff reported abdominal pain in her July 2010 Function Report (R. 238), well after the date last insured. The medical records for the relevant time period simply did not

mention the types of flares described by Plaintiff. And, as noted above, the ALJ found Plaintiff's allegations about the severity of her work-related limitations not fully credible.

The ALJ also considered Plaintiff's July 2010 Disability Report, wherein Plaintiff reported that her pain and fatigue were worse than when she applied for Disability Benefits in June 2010. ALJ Decision, R. 52. Further, Plaintiff testified at the May 2012 hearing that her lupus only recently came out of remission. Tr., R. 88-89, 91. This evidence, along with the medical records, suggests that Plaintiff's symptoms did not become severe until well after the date last insured. Contrary to Plaintiff's argument, the ALJ did not rely solely on Plaintiff's statements of "doing well" as evidence that Plaintiff was not disabled. Moreover, the ALJ did not misunderstand the episodic nature of lupus when determining Plaintiff's residual functional capacity.

Plaintiff also argues that the ALJ did not specifically address her side effects when determining Plaintiff's residual functional capacity. As noted above, Plaintiff's reports of nausea due to medication do not show up in the record until late 2010, well after the date last insured. Therefore, the ALJ did not err by failing to

address Plaintiff's nausea due to Motrin. Plaintiff is correct that the ALJ did not address Plaintiff's photosensitivity, but Plaintiff does not indicate how the photosensitivity was disabling or how the ALJ should have accommodated Plaintiff's photosensitivity in the residual functional capacity determination. Therefore, Plaintiff has forfeited this argument.

In sum, the Court finds that the ALJ's decision is supported by substantial evidence.

## IV. CONCLUSION

For the reasons stated, Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (d/e 13) are DENIED. This Court ADOPTS the Magistrate Judge's Report and Recommendation (d/e 12) in full. Plaintiff's Motion for Summary Judgment (d/e 7) is DENIED and Defendant's Motion for Summary Affirmance (d/e 10) is GRANTED. The decision of the Commissioner is AFFIRMED. THIS CASE IS CLOSED.

ENTER: August 11, 2015

FOR THE COURT:

                              <u>    s/Sue E. Myerscough </u>
                              SUE E. MYERSCOUGH
                    UNITED STATES DISTRICT JUDGE